IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DOUGLAS RAY WINTER                                                                PLAINTIFF

v.                              Civil No. 4:19-cv-04113

SHERIFF JACKIE RUNION, Miller
County, Arkansas; WARDEN WALKER;
CORRECTIONAL OFFICER HENDERSON;
and NURSE CHELSEA                                                                 DEFENDANTS

## ORDER

This is a civil rights action filed by Plaintiff, Douglas Ray Winter, pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. The case is before the Court for preservice screening under the provisions of the Prison Litigation Reform Act (PLRA). Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

### I. BACKGROUND

Plaintiff filed his Complaint on September 11, 2019. (ECF No. 1). His application to proceed *in forma pauperis* was granted the same day. (ECF No. 3). Plaintiff is currently incarcerated in the Miller County Detention Center ("MCDC"). A review of Plaintiff's complaint revealed that Plaintiff did not specifically state what each named defendant did or failed to do that allegedly violated his constitutional rights and Plaintiff did not indicate what injuries he suffered. Consequently, the Court ordered Plaintiff to file an Amended Complaint. (ECF No. 6). On September 25, 2019, Plaintiff filed an Amended Complaint naming as Defendants Jackie Runion, Sheriff of Miller County, Arkansas; Warden Walker of the MCDC; Correctional Officer Henderson of the MCDC; and Nurse Chelsea, who is employed by Southern Health Partners, Inc., the third party medical provider at the MCDC. (ECF No. 7). Plaintiff is seeking compensatory

1

and punitive damages and sues all Defendants in both their individual and official capacities.

Plaintiff describes his first claim as "medical neglect" and identifies Defendants Runion, Walker, and Chelsea as the responsible parties. He states that on or about June 21, 2019, "upon explaining to Nurse Chelsea that I had previously taken preventive medication for T.B. at that time she forced me to take the T.B. test anyway. I was distressed for my health." (ECF No. 7, p. 4). He describes his official capacity claim under Claim One as "medical neglect." (ECF No. 7, p. 5.)

Plaintiff describes his second claim as "unprofessional conduct" and identifies Defendants Runion, Walker, and Henderson as being involved. He states that "CO Henderson harassed my fiancé and I and caused me emotional distress." (ECF No. 7, p. 5). He describes his official capacity claim under Claim Two as "conduct unbecoming of an officer." *Id.* at p. 6.

Plaintiff describes his third claim as "Health and Safety Violations" and identifies Defendants Runion and Walter as the responsible parties. He states that on or about June 26, 2019, "a storm blew out power to facility at which time for approximately 6 to 8 hours there was no emergency power or lights. I was in fear for my life and safety." (ECF No. 7, p. 6). He describes his official capacity claim as "failing to provide a safe environment." *Id.* at p. 7.

## II. LEGAL STANDARD

Under the PLRA, the Court is obligated to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted

sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, even a *pro se* Plaintiff must allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

Mere conclusory allegations with no supporting factual averments are insufficient to state a claim upon which relief can be based. *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993); *see also Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).

### III. ANALYSIS

**A. Claim One – Right to Refuse Medical Treatment**

Plaintiff claims Defendants Runion, Walker, and Nurse Chelsea medically neglected him when Nurse Chelsea "forced" Plaintiff to take a tuberculosis ("TB") test even though he had previously taken preventive medication for the disease. Although Plaintiff describes his claim as one for medical neglect, the Court construes his claim as one for a violation of his right to refuse medical treatment or testing.

"Although prisoners retain their constitutional rights, limitations may be placed on the exercise of those rights in light of the needs of the penal system." *Murphy v. Mo. Dep't. of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004). "Constitutional claims that would otherwise receive strict scrutiny analysis if raised by a member of the general population are evaluated under a lesser standard of scrutiny in the context of a prison setting." *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 84 (1987)). "A prison regulation or action is valid, therefore, even if it restricts a prisoner's

3

constitutional rights if it is 'reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). When determining the reasonableness of the regulation at issue, courts consider the following four factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) how the accommodation of the asserted constitutional right will affect guards, other inmates, and the allocation of prison resources; and (4) whether there are alternatives that fully accommodate the prisoner "at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 89-91.

It is well known that TB is a serious disease harmful to the lungs and other organs and that prisons are "high risk environments for tuberculosis infection." *Butler v. Fletcher*, 465 F.3d 340, (8th Cir. 2006) (citing *DeGidio v. Pung*, 920 F.2d 252, 527 (8th Cir. 1990)). Also, there is widespread agreement that penal institutions have a compelling interest in stopping the spread of TB. *See, e.g.*, *Sample v. Angelone*, 1999 WL 52347, at *1 (4th Cir. 1999) (per curiam) (affirming district court conclusion that "regulation requiring PPD testing of inmates and prison staff for [TB] exposure is reasonably related to the legitimate penological objective of ensuring the health and welfare of inmates"); *Washington v. Cambra*, 165 F.3d 920 (table), 1998 WL 840946, at *1 (9th Cir. 1998) (unpublished memorandum opinion) (detection and containment of tuberculosis is undeniably a legitimate penological goal); *McCormick v. Stalder*, 105 F.3d 1059, 1060 (5th Cir. 1997) (prisons have a compelling interest in preventing the spread of tuberculosis); *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (correctional officers have an affirmative obligation to protect inmates from infectious disease). In fact, prison officials are subject to potential liability if they fail to properly screen prisoners for communicable diseases such as TB. *See, e.g., DeGidio v. Pung*, 920 F.2d 525, 528-533 (8th Cir. 1990) (holding that prison officials' reckless response to

tuberculosis outbreak amounted to deliberate indifference in violation of the Eighth Amendment).

As a result, the courts have held the involuntary administration of TB testing does not offend the Constitution. *E.g., Washington*, 165 F.3d at *2 (holding that the involuntary administration of TB testing did not offend the Due process Clause or the Eight Amendment). Accordingly, the mere fact that Plaintiff was "forced" to undergo TB testing does not state a constitutional claim. The Court finds that Plaintiff's claims against Defendants Runion, Walker, and Chelsea in their individual capacities relating to the administration of the TB test at the MCDC should be dismissed for failure to state a claim upon which relief may be granted.[1]

**B. Claim Two - Harassment**

In his second claim, Plaintiff alleges Defendants Runion, Walker, and Henderson violated his constitutional rights when Defendant Henderson "harassed my fiancé and I and caused me emotional distress." ECF No. 7, p. 5. He goes on to state the conduct was "unbecoming of an officer." ECF No. 7, p. 6. He does not, however, provide any description as to whether the alleged harassment was verbal or physical. In his original Complaint, Plaintiff describes the harassment as follows, "On 8-16-2019 It was brought to my attention that Officer Henderson degraded and slandered me . . . and acted highly unprofessional . . . by inquiring about my alleged charges, and my fiancés' alleged charges by trying to pit us against each other for his own gain." (ECF No. 1, p. 7).

Title 42 of the United States Code provides a federal cause of action for the deprivation,

---

[1] Alternatively, the Court finds that these claims against Sheriff Runion and Warden Walker should be dismissed because Plaintiff has failed to set forth any facts indicating that Sheriff Runion and Warden Walker had any personal involvement in administering the TB test. *See Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011) (holding that general responsibility for supervising a detention center is insufficient to establish personal involvement); *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) ("To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights.").

under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "As a general rule, the federal civil-rights remedies available to a person under section 1983 are not so broad as those available under state law, common or statutory." *Burton v. Livingston*, 791 F.2d 97, 99 (8th Cir. 1986).

"Verbal threats do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail officials did not rise to the level of a constitutional violation). Accordingly, Plaintiff's claims based on verbal threats and harassment fail because they are not cognizable under section 1983. The Court finds that Plaintiff's claims of harassment against all Defendants in their individual capacities should be dismissed for failure to state a claim upon which relief may be granted.[2]

### C. Claim Three - Conditions of Confinement

Plaintiff's third claim asserts a "health and safety violation." (ECF No. 7, p. 6). "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis,* 523 U.S. 833 (1998) (citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.

---

[2] Alternatively, the Court finds that these claims against Sheriff Runion and Warden Walker should be dismissed because Plaintiff has failed to set forth any facts indicating that Sheriff Runion and Warden Walker had any personal involvement in harassing Plaintiff. *See Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011) (holding that general responsibility for supervising a detention center is insufficient to establish personal involvement); *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) ("To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights.").

*Farmer v. Brennan,* 511 U.S. 825, 832 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *Revels v. Vincenz,* 382 F.3d 870, 875 (8th Cir. 2004) (citing *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels,* 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Id*.

The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). *See also Butler v. Fletcher,* 465 F.3d 340, 345 (8th Cir. 2006) (deliberate indifference standard applies to claims brought by pretrial detainees that prison officials failed to provide adequate food, clothing, shelter, etc.). Any injury resulting from conditions of confinement must be greater than *de minimis*. *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). Keeping these principles in mind, the Court will now turn to the examination of the conditions of confinement alleged in Plaintiff's Complaint.

Plaintiff claims his constitutional rights were violated when "a storm blew out power" at the MCDC and the facility was without power for six (6) to eight (8) hours. Although Plaintiff states that he was "in fear for [his] life and safety," Plaintiff does not claim the lack of power at the MCDC during this time created an excessive risk to his health or safety. *See, e.g., Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir. 1996) (finding a toilet overflow which lasts four days does not amount to a constitutional violation and is instead a *de minimis* imposition).

Finally, even if the Court assumes, *arguendo,* that Plaintiff's allegations state unlawful conditions of confinement Plaintiff does not allege that he suffered any actual physical injury as a result of these conditions. *See Irving,* 519 F.3d at 448 (prisoner must suffer an actual injury to state an Eighth Amendment claim). Pursuant to the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Accordingly, Plaintiff fails to state any claims based on his conditions of confinement.

### D. Official Capacity Claims

Plaintiff sues Defendants in their official capacity. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In this case, Plaintiff's official capacity claims against Defendants are treated as claims against Miller County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Miller County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to

an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Here, Plaintiff fails to identify any custom or policy of Miller County which violated his constitutional rights. Because he fails to allege any plausible official capacity claims, the Court finds that any official capacity claim should be dismissed.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Plaintiff's claims against all Defendants should be and hereby are **DISMISSED WITHOUT PREJUDICE**. The dismissal of this action constitutes a "strike" under 28 U.S.C. § 1915(g). The Clerk is **DIRECTED** to place a § 1915(g) strike flag on the case.

**IT IS SO ORDERED**, this 12th day of November 2019.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge